| | |
|---|---|
| | Print Form |
| | **Instructions for use:** |
| | 1. Check the above box "Highlight Fields" to show fields on this form. |
| | 2. Complete the form. |
| | 3. Print, sign the document, and file with the court. |

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

DAVID L STRIDER

    Plaintiff(s),

vs.

DEPARTMENT OF LABOR AND INDUSTRIES, RUSSELL JOHNSON, DEANNA JACKSON

    Defendant(s).

**C06 5555 RJB**

**CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. §1983**
(for use only by plaintiffs not in custody)

## Parties to this Complaint:

**Plaintiff's Name, Address and Phone Number:**

MAILING ADDRESS: TELEPHONE-523-238-3671
DAVID L STRIDER
PO BOX 5974
LACEY, WA 98509-5974
PHYSICAL ADDRESS:
501 112TH ST S
TACOMA, WA 98444

**Defendant's Name, Address and Phone Number:**

LABOR & INDUSTRIES-7273 LINDERSON WAY SE, TUMWATER, WA 98504 TEL: 360-902-5800

**Defendant's Name, Address and Phone Number:**

Russ Johnson-7273 LINDERSON WAY SE, TUMWATER, WA 98504 TEL: 360-902-6695

06-CV-05555-CMP

Defendant's Name, Address and Phone Number:

Deanna Jackson-7273 LINDERSON WAY SE, TUMWATER, WA 98504 TEL: 360-902-5542

(If you have more defendants, list them using the same outline on another piece of paper. Attach additional sheets, if necessary)

**Previous Lawsuits:**

Have you brought any other lawsuits in any federal court in the United States:?

[X] No   [ ] Yes   If yes, how many? [ ]

**Describe the Lawsuit:**

Parties to this previous lawsuit:

Plaintiff(s):

Defendant(s):

(If there is more than one previous lawsuit, describe the additional lawsuits on another piece of paper using the same outline. Attach additional sheets, if necessary)

Court and Name of District:

Docket Number:                          Assigned Judge:

Disposition :
(For example, was the case dismissed as frivolous or for failure to state a claim? Was it appealed? Is it still pending?)

Approximate filing date of lawsuit:

Approximate date of disposition:

**Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. **Do not give any legal arguments or cite any cases or statutes.** If you allege a number of related claims, number and set forth each claim in a separate paragraph. (Attach additional sheets, if necessary.)

The following is a list of times and issues regarding the complaint of discrimination and hostile work environment that I have experienced since being at the Public Disclosure Unit, Labor and Industries, Tumwater, WA 98504. Some of the events may be too old but it shows a history of the conditions I have worked under being in public service. It is my belief that my qualifications were ignored on a continual basis by my supervisor because it did not follow her own agenda. Although the hiring of relatives may or may not be an issue I will show that it was a factor for the issues at hand. I will begin with current date and work backwards to where I believe it showed evidence of discrimination.

1. FMLA, currently I am under doctor's care for severe stress. If needed will sign a release for medical records.
2. Admitted to Capital Medical Center, complaint, chest pains left arm aching. Overnight observation released followed by prescription drugs to alleviate stress and assist me in sleeping.
3. An issue sometime on or around the 10/20/05 regarding a fulfilled request, which had my signature on it, when I asked Ms. Jackson about it she said, "I talked to Jamie about it already." My response was that I would like to know since it had my name on it why I wasn't asked about it. After a long pause she told me, it was nothing but the requestor wanting hard copies of the information but, the atmosphere was that of placing blame keeping me out of the circle when it was my responsibility resolve any issue or addendum to a request rather than have me think there was a mistake.
4. After returning from annual leave on or about 10/18/05, I noticed a dramatic increase in my workload. On 10/12/05 Ms. Jackson was instructed by DOP, (Department of Personal, State of Washington), not to change or modify my current duties. I had already scheduled leave on the books and found out a week to ten days prior to 10/12/05 that a review was going to be done that day regarding a reallocation issue, I took annual leave when Ms Jackson also knew what was going on when I stated in my leave request for an additional day that it was legal matters I could not reschedule, I could have had saved that leave day had she asked me or told me that she too was going to be there, further evidence of her distain for me. However when I returned, it was no longer a team effort but more of me working under Jamie's supervision. Also, under my suggestions to the management staff of Public Disclosure, was able achieve a 3-4 day turn around for request. This was long before any of the current staff was ever in the unit, except one Ms. Chastain who was on medical leave. During this same time frame 10/18/05 Jamie, Ms Gerken, was having her first employee evaluation. I do not believe that her issues of using the internet for personal use, arriving late, leaving early and long 20-40 minute breaks every day. I had brought this to Ms. Jackson's attention in my review in June of 2005, her response was, "you know David, I have had complaints about you," She did not produce any but because I was trying to confidentially allow her to see for herself and correct it. Instead she became very defensive almost confrontational. Ms. Gerken as well as one other staff member in the unit is related to Ms. Jackson.
5. I was scheduled for an assessment test for a promotion within the building. This position assessment was scheduled for three hours. I was told that the person conducting the testing needed to contact her to verify my being scheduled. This was a direct result from the evaluation conducted in July 2005 where the union representative told her that her demands were prohibitive. Ms. Jackson knew of the procedure for that classification because her husband went through the same testing.
6. 08/16/05 a notice of employment went out on the intra-net the regarding a position within Public Disclosure. I applied for it as well as others and when it was all said and done there was not one but two of the positions filled. Only one was listed, had there had been two openings listed the amount of candidates would have increased. This information became known when Ms. Jackson announced that the process was over, and that two positions were available and that Ms. Swilley and Ms. Gerken both, related to Ms. Jackson, got the promotion to full time employee status. This is a continuation of favoritism that is mentioned in the next point.
7. It was evident after my first meeting for my yearly evaluation that there was a communication problem between Ms. Jackson and myself. I requested that further evaluations be conducted with a union representative present. There were three meetings with Ms. Jackson, myself and a union representative Ms. Flory, where several time Ms. Jackson was told she couldn't do that and instructed me not to. After a while we all agreed on the wording of my duties, which I was to amend and then show to both Ms. Jackson and Flory. This I did with both of their suggestions incorporated into the new job description. However, what came back for my signature was almost exactly what had been submitted before only this time with new dates. When I confronted Ms. Jackson on this she stated it was what HR sent down. I told her Deanna, we submit this and it will come back denied no matter how many times it is submitted. From her no response

**Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. **Do not give any legal arguments or cite any cases or statutes.** If you allege a number of related claims, number and set forth each claim in a separate paragraph. (Attach additional sheets, if necessary.)

6. 08/16/05 a notice of employment went out on the intra-net the regarding a position within Public Disclosure. I applied for it as well as others and when it was all said and done there was not one but two of the positions filled. Only one was listed, had there had been two openings listed the amount of candidates would have increased. This information became known when Ms. Jackson announced that the process was over, and that two positions were available and that Ms. Swilley and Ms. Gerken both, related to Ms. Jackson, got the promotion to full time employee status. This is a continuation of favoritism that is mentioned in the next point.

7. It was evident after my first meeting for my yearly evaluation that there was a communication problem between Ms. Jackson and myself. I requested that further evaluations be conducted with a union representative present. There were three meetings with Ms. Jackson, myself and a union representative Ms. Flory, where several time Ms. Jackson was told she couldn't do that and instructed me not to. After a while we all agreed on the wording of my duties, which I was to amend and then show to both Ms. Jackson and Flory. This I did with both of their suggestions incorporated into the new job description. However, what came back for my signature was almost exactly what had been submitted before only this time with new dates. When I confronted Ms. Jackson on this she stated it was what HR sent down. I told her Deanna, we submit this and it will come back denied no matter how many times it is submitted. From her no response just blank knowing full well that what was agreed in principle was completely ignored slapping<virtually Ms. Flory, the Union, and myself in the face. I was told to sign the evaluation had to get it done and I tried to explain to her (Ms. Jackson) this was my life she was affecting, no response except sign it. This I did under duress. The next issue is within the same time frame. When she initially had said to me that we would work on it so that a reallocation could be done. Instead on 12/19/05 the DOP hearing will resume out come unknown.

8. During a unit meeting in June 2005, Ms. Jackson said she was working on something the whole group would benefit from, a possible pay increase with a title more reflective of what we actually did. Then the letter came to each of us telling us our positions had changed, all except mine. Everyone went from a level 35-pay grade to a level 43-pay grade. Ms. Jackson I discovered submitted my reallocation without my signature or modifying my definition duties. Also during this period she changed my duties that where I had been certifying records no longer was part of my duties an issue where existed regarding depositions. In a unit meeting I felt a hostile well ignored by Russ Johnson head of Legal Services for LNI (Labor and Industries) when this issue came up. Prior to this event Ms. Jackson would review each Subpoena and give it a yes or no on fulfillment. The task of determining the legality of a Subpoena after April 2005 had fallen on Ms. Gerken and I, a task we were capable of doing. But it was the word deposition that had Ms. Gerken questioning the idea of fulfilling the request. It was common knowledge we did not do depositions because we were not the holder of the records only an instrument of agency to fulfill the request. In the past Ms. Jackson even with this knowledge still fulfilled the request, this I did under her direction. When Ms. Gerken questioned the deposition to Ms. Jackson they sent a no authorization letter to the requestor who always supplied the proper information needed. The blame was shifted to me and Mr. Johnson was under the impression that I was performing in a maverick style work ethic. It was during this same time that and over that issue I no longer could certify records, after performing the task for a year with no errors.

9. Late spring of 2005, Ms. Jackson told Ms. Gerken she didn't have to listen to me, that I was no one, nobody. Also, around this time she said I was nothing but a clerk that is all she saw me as, I asked her didn't you check my references, no answer from her. Evaluations and unit meetings she made efforts to contradict or contest what I said. Also she said why don't you try another agency instead of LNI.

10. Sexual remarks and innuendos regarding her marriage, My next husband is going to be bionic, her trip to Europe in October 2005, upset her husband and she took or displayed to me in her tones to bad, take this time for yourself, and I don't see what the problem is? He was in a program that would not allow leave at that time (Mr. Jackson) thus is feeling upset. Deanna had no problem or reservations letting us all know about it. I will say it was the daughter of the Jackson's living in Germany because her husband was active duty Army. I did not need to know the state of her relationship and perhaps because I did not embrace an after hours relationship with her husband that she held this against me. I respect her husband and we have similar interest but because she was my superior, I felt this might lead to a conflict of interest or speculation on promotion within the unit that would have severe repercussions and or damage my credibility.

**Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. **Do not give any legal arguments or cite any cases or statutes.** If you allege a number of related claims, number and set forth each claim in a separate paragraph. (Attach additional sheets, if necessary.)

11. In 2004, I was asked to spy on then Public Disclosure Manager, Joe Molenda. To observe his actions, eavesdrop on his conversations, and report anytime he appeared to be dozing off. While trying to do my own schedule work. During a deposition the same year independent investigations occurred. I was asked by HR to review my testimony and there was only one small-redacted part of a statement used. I asked why? Because that is what they wanted, I contested the use of what I said and asked to talk to someone else about it, I was referred to Steven Smith of HR and after talking to him and explaining to him he said he understood but there was nothing he could do. This point in time the hostility became escalated. My view on this point is I contested the way my testimony was used and realized then that I had been manipulated into removing Mr. Molenda. I had heard Pam Shipman (Ms. Gerken's mother) along with Julie Donaldson, while sitting at our table in the unit, say what a problem Joe was and that they needed to get rid of him. Being new I listened and made my own observation. Mine was not the same as theirs.

12. There has been a lot of turnover in our unit and because I wanted to advance I took a scored 100 on the registry for Customer Service Specialist-2. This is a level all other staff in the unit were working at except unit and me management. In October 2003, while still on temp status after accepting an initial 30-day staffing need with no guarantee, I sent both Ms. Jackson and Mr. Molenda notice of my score and interest should the position become available. Mr. Molenda, Joe, said Deanna does all of the manpower issues and staffing but he felt I could do the job. Since this time in October 2003 there have been five openings or positions filled and then upgraded to today's current level. Two of the opportunities went directly to persons related to each other and related to Ms. Jackson.

Since returning from FMLA in January of 2006, I was reduced making copies and insuring mail was processed outgoing. I was told Pam (a new temp) typed faster. Within the first week I received a written warning regarding Ms. Gerken. That was the first instance. When she, Ms. Jackson complained of odors, I was instructed not to use my after-shave conditioner after using the same conditioner since the first day of hire, I however had to endure the odor of horse feces and urine emitting from Ms. Jackson. The odors she smelled were coming from the new hire cubicle from heavy perfume usage, which still does. During this same time she pulled me aside to a room to ask me about drug use (prescription medication) I told her that I was released to full duty with no restrictions. Performance was constantly scrutinized and evaluated with changes and modifications of job duties. This July I received my annual evaluation where the comment was made by Ms. Jackson that I appeared to be "wigging out". My reply was that it was disappointed nothing else and that if she thought that perhaps a union rep needed to be present, she didn't say anything. In August 2006, the new hire was promoted to acting Forms and Record Analyst 3 with no consideration given to me or my experience within the unit. Since coming to the unit all new hires, promotions and reallocations have gone to women under Ms. Jackson's supervision.

In closings I believe that I have been the receiver of sexual innuendos, hostile environment, age and gender discrimination, I am the only man in the unit, and lost employment opportunities and retaliatory actions by Ms. Jackson, partly due to nepotism. This has caused my absence from the work force, also precipitated mental anxiety, and placed me under doctor's care. Russell Johnson is mentioned in the suit because he enabled Ms. Jackson and her unbridled actions toward me, every meeting he would come to I was ignored or spoke to in less than tones to other employees by Mr. Johnson.

I realize that some of the issues mentioned fall out of the prescribed time frames but the issues mentioned have been present and still remain. As a public servant, employee to the people of Washington makes it even harder to understand why this is happening. I have tried to develop a time line and course of events to show the bias nature of Ms. Jackson and her using Ms. Gerken as an instrument of her plan who appears all to willing to comply.

**Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

To have all LWOP re-instated (leave without pay) leave and sick-time reinstated.
Lost wages recouped.
Retirement benefits recalculated to reflect recoupment.
Award damages in sum of $2,000,000.00.
Defendants pay for all court costs including lawyer fees and all other assessed financial obligations.
Remove Russel Johnson and Deanna Jackson for management and supervisory roles.

I declare under penalty of perjury that the foregoing is true and correct.

9/25/2006
Date

Signature of Plaintiff    pro se